IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBORAH S. TEEPLES, as personal representative of Charlotte S. Boze, Deceased | ) ) ) ) |
| Plaintiff, | ) ) Case No. 3:20-cv-00941 |
| v. | ) ) JUDGE CAMPBELL ) MAGISTRATE JUDGE FRENSLEY |
| BIC USA INC., | ) ) |
| Defendant. | ) ) ) ) |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant BIC USA Inc.'s Motion to Dismiss and/or Exclude Evidence Due to Spoliation. (Doc. No. 66). Plaintiff Deborah Teeples, as representative of the estate of Charlotte Boze, filed a response in opposition. (Doc. No. 73).

For the reasons stated herein, the motion for sanction (Doc. No. 66) is **DENIED** as to the request for sanctions related to the destruction of evidence by Billy Boze on December 29, 2019, and **DENIED WITHOUT PREJUDICE** as to the request for sanctions related to the destruction and/or failure to preserve evidence after that date.

### I. BACKGROUND[1]

This product liability lawsuit arises out of a fire incident that occurred on December 28, 2019, at 5:00 a.m. (SUMF ¶ 1). At the time of the fire, Charlotte Boze was alone in the sitting room of her home. (*Id.* ¶ 5). Her adult son, Billy Boze, was at the other end of the house. (*Id.* ¶ 6).

---

[1] The facts are taken from the Statement of Undisputed Material Facts filed in conjunction with Defendant's Motion for Summary Judgment and Plaintiff's response to those facts. (Doc. Nos. 61, 77) (hereinafter cited as "SUMF ¶ __.").

Billy Boze heard his mother scream, ran to the sitting room, and found Charlotte Boze with the upper left chest area of her shirt on fire. (*Id*. ¶¶ 6, 7). Billy Boze patted out the flames with his hands and removed the shirt and threw it on the floor. (*Id*. ¶ 8). Other than his mother's shirt, Billy Bose did not see anything else in the room burning. (*Id*. ¶ 12). He wrapped his mother in a blanket and drove her to Sumner Regional Medical Center. (*Id*. ¶ 13).

Billy Boze did not see how the fire began and, at the time of the incident, did not see a lighter. (*Id*. ¶¶ 9, 28). He testified that when they were on the way to the hospital, his mother told him that the fire started when she lit her cigarette, and that she "reckon[ed] [the lighter] didn't go out because [her] shirt caught on fire." (Boze Dep., Doc. No. 60-7 at 47 ("She said the lighter didn't go out and that's the only thing she can think of why her shirt caught on fire.")).

When they arrived at the hospital later that morning, Billy Boze told hospital personnel that he did not know how Charlotte Boze got burned and that they should "ask her." (Boze Dep., Doc. No. 60-7 at 49). Charlotte Boze's statements that day to medical personnel about the source of the fire were documented in her medical records. (SUMF ¶¶ 17-25). The records from that day do not include mention of a lighter. (*Id*.).

When he left the hospital, Billy Boze returned to and cleaned the house. (Boze Dep., Doc. No. 60-7 at 57-58). He "picked the shirt up off the floor and put it in the trash can, [and] cleaned up the mess there on the floor." (*Id*.). That is when he found the lighter on the floor by the entertainment center three or four feet away from where she had been sitting. (*Id*. at 58-59, 68). Boze testified that the lighter did not have any burn marks or "melted things on it" that he knew of. (*Id*. at 61). He used the lighter to light his own cigarette and observed that it stayed lit for about 20-30 seconds before it went out. (*Id*. at 62).

Then, he put the lighter and Charlotte Boze's cigarettes on the windowsill. (*Id*.). Approximately a week later, he gave the lighter to his sister. (*Id*.). It is not clear when Charlotte Boze or her family members first consulted with counsel. Deborah Teeples, Charlotte Boze's daughter suggested it might have been shortly after the incident. In her deposition, she testified about Billy Boze giving her the lighter: "Billy picked [the lighter] up off the floor, he lit his cigarette, it stayed lit, he called me and brought it to me and I called Morgan & Morgan … I put it on my desk in my bedroom, I called Morgan & Morgan, and they sent a courier to pick it up." (Teeples Dep., Doc. No. 60-6 at 66, 73).

Plaintiff's response to the motion for sanctions states that Plaintiff formally retained counsel and expert Peter Layson in March or April 2020, three or four months after the fire. (*See* Doc. No. 73 at 3). At that time, the family still owned the home and Charlotte Boze was still alive. (Layson Dep., Doc. No. 60-4 at 81-82). Layson, however, never visited the scene of the fire and never saw photographs of scene of the fire or the contents of the home. (*Id*. at 80 (confirming that he had not seen Charlotte Boze's cigarettes, the chair she was sitting in, the clothing she had been wearing, or any other personal effects that may have been in the house at the time of the incident)). He never interviewed or preserved the testimony of Charlotte Boze, who was the only eyewitness. (*Id*. at 78). In fact, he never spoke directly with Charlotte Boze or her children; all of his communications were with Plaintiff's attorney. (*Id*.).

Other than preserving the lighter, no one documented, preserved, photographed or videoed any evidence or objects from the fire scene. (Teeples Dep., 17-19, 22, 66, 138-139; Boze Dep., Doc. No. 60-7 at 68, 76-77). All of Charlotte Boze's personal effects were discarded or sold after the fire. (*Id*.). The house itself was sold. (*Id*.). Charlotte Boze was never interviewed or her

3

testimony preserved before she died in May 2021, eighteen months after the incident from Lewy body dementia. (SUMF ¶ 52; Roby Aff., Doc. No. 60-2 at ¶ 17; Layson Dep., Doc. No. 60-4 at 78).

This lawsuit was filed November 2, 2020. (Doc. No. 1). Defendant was served on November 16, 2020. (Doc. No. 12). Before that time, Defendant had no knowledge of the incident or any claims involving a lighter. (SUMF ¶ 53). BIC claims it was not informed of Charlotte Boze's impending death before it occurred in May 2021.

## II. ANALYSIS

Defendant seeks sanctions for spoliation of evidence. Specifically, Defendant seeks: (1) dismissal of the case, or (2) exclusion of any testimony from Plaintiff's witnesses and experts related to the cause and origin of the fire or any alleged involvement of the subject lighter in that incident. Defendant contends these sanctions are necessary to place it in the same position it would have occupied absent the spoliation.

Federal law applies to the Court's consideration of spoliation sanctions. *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009). District Courts have broad discretion to craft proper sanctions for spoliation of evidence. *Adkins v. Wolever* ("*Adkins II*"), 692 F.3d 499, 503 (6th Cir. 2012).

The standard for determining whether a particular spoliation sanction is appropriate is as follows:

> A party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; *and* (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. Thus, an adverse inference for evidence spoliation is appropriate if the Defendants knew the evidence was relevant to some issue at trial and their

4

culpable conduct resulted in its loss or destruction. This depends on the alleged spoliator's mental state regarding any obligation to preserve evidence and the subsequent destruction.

*Id.* at 503-04 (quoting *Beaven v. United States Dep't of Justice*, 622 F.3d 540, 553-54 (6th Cir. 2010)).

A "culpable state of mind" may be established by showing "that the evidence was destroyed knowingly, even if without an intent to breach a duty to preserve it, or negligently." *Id*. at 504-05. "An adverse inference for evidence spoliation is appropriate if the Defendants 'knew the evidence was relevant to some issue at trial and … [their culpable] conduct resulted in its loss or destruction.'" *Beaven*, 622 F.3d at 553 (quoting *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004)). "An obligation to preserve may arise 'when a party should have known that the evidence may be relevant to future litigation.'" *Id*. at 553-54 (internal citations omitted).

Spoliation sanctions must "serve both fairness and punitive functions." *Id*. Severity should correspond to a "party's degree of fault under the circumstances, including the recognition that a party's degree of fault may rang[e] from innocence through the degrees of negligence to intentionality." *Id*. at 554 (internal quotations and citations omitted).

Defendant contends Plaintiff's failure to preserve evidence or document the scene in any way, including interviewing Charlotte Boze – the only witness to the incident – deprived it of vital information relevant to its defense. Defendant argues that Plaintiff's failure to document the scene and preserve all available evidence – including fire debris, clothing, personal effects, smoking materials, and other furniture, objects, and services – violated numerous industry standards governing the investigation of fire events and irreparably prejudiced its ability to defend itself in this litigation.

Plaintiff responds that there was no spoliation of evidence, that by the time the family was contemplating litigation the "scene" had already been cleaned up and the only item of evidentiary value that remained was the lighter. Plaintiff asserts there was never anything to preserve because there was "little thermal damages to anything in the room, and the fire was contained to within a limited area by the recliner." (Doc. No. 73 at 2-3 ("By the time the Boze family had retained [counsel], who retained Mr. Peter Layson, approximately three to four months after the incident, the only item of evidentiary value was the lighter.")). Plaintiff does not dispute that Billy Boze threw away the pajama top when he was cleaning up after the incident, but argues this does not equate to a malicious and negligent failure to preserve critical evidence; he was merely cleaning up because his grandchildren were coming over. (*Id*. at 2-3).

Defendant argues the Court should impose sanctions following the reasoning in *Lexington Insurance Company v. Tubbs*, No. 06-2847-STA, 2009 WL 1586862 (W.D. Tenn. Jun. 3, 2009), which, like this case, involves a fire investigation and destruction of evidence by a non-party that had a relationship to the plaintiff. That case arose out of a fire in a hotel room. *Id*. at *1. The fire department determined that a smoldering cigarette ignited a chair in the room. *Id*. The sole registered guest of the room became the defendant. *Id*. The plaintiff, which was the hotel's insurance company, hired a remediation company to repair the damage and an expert to report on the cause of the fire. *Id*. The expert concluded that the fire originated from a smoldering cigarette and ruled out electrical sources of fire. *Id*. He had an opportunity to inspect the chair and a nearby halogen lamp that was near the chair. *Id*. Sometime after he inspected the chair and lamp "became unavailable." *Id*. at *2. As a result, the Defendant's expert, who contended the fire was caused by a defective halogen lamp, was unable to inspect the chair or the lamp. (*Id*.).

The *Lexington Insurance* court found that spoliation had occurred, and sanctions were appropriate because the plaintiff had a duty to preserve the chair and lamp for plaintiff's inspection. *Id*. at *3. The court acknowledged that the case was "slightly more complex" because it was not clear that the plaintiff insurance company owned or controlled the evidence after the fire. *Id*. But the court concluded that because the remediation company was the agent of the hotel and the insurance company stood in the shoes of the hotel for purposes of the litigation, sanctions were appropriate. The court noted that "[e]ven if Plaintiff did not own or exercise control over the chair and lamp, Plaintiff had a duty to give Defendant 'notice of access to the evidence or of the possible destruction of evidence.'" *Id*.

Plaintiff argues that *Lexington Insurance* is distinguishable from this case because Billy Boze's "clean up" of the fire scene deprived experts from *both* parties of an opportunity to examine evidence from the scene of the fire. Therefore, Plaintiff argues, there is no need to "level the playing field" with sanctions.

As an initial matter, there is no question that Plaintiff failed to preserve evidence that, had it not been destroyed, would have been probative of the issues in this case. Of particular value would have been the shirt worn by Charlotte Boze at the time of the incident, the cigarette she was smoking or attempting to smoke and related smoking materials, and, of course, testimony from Ms. Boze herself. Perhaps secondary to the failure to preserve specific items of evidentiary significance is the failure to document the condition of the scene either immediately after the incident or in the months following, during which Plaintiff consulted with and formally retained counsel and an expert.

### A. Clean Up on December 29, 2019

With regard to Billy Boze's "clean up" immediately following the incident, the Court agrees that the evidence disposed of was highly probative of the claims in this case, and that the failure to preserve this evidence undoubtedly hampered Defendant's ability to investigate and defend itself in this case. Nevertheless, there's minimal evidence that Plaintiff was contemplating litigation the day after the incident when Billy Boze disposed of the pajama top and other debris from the scene. Moreover, Billy Boze is not a party to this action, and Charlotte Boze, the original plaintiff, was in the hospital and entirely unable to ensure that the evidence was preserved. Unlike in *Lexington Insurance*, where the remediation company that disposed of the chair and lamp was acting as an agent for the hotel, here, there is no suggestion that Billy Boze was acting on behalf of Charlotte Boze when he "cleaned up" the room.

Accordingly, the Court finds the sanctions requested by Defendant – dismissal or exclusion of testimony from the Plaintiff's witnesses and experts related to involvement of the subject lighter in the fire or testimony related to the cause and origin of the fire – are not warranted as to the evidence lost as a result of the "clean up" the day after the fire. The motion for sanctions related to the destruction of this evidence is **DENIED**.

### B. Evidence Remaining After December 29, 2019

The Plaintiff's failure to preserve the remaining evidence or to provide Defendant notice of access to the evidence or of the possible destruction of the evidence merits separate consideration. As stated above, to determine whether sanctions for spoliation of evidence are appropriate, the Court must consider when a duty to preserve evidence arose, the party's culpability in destruction of that evidence, and the relevance of the evidence.

There appears to be little question that the house, the recliner, and Charlotte Boze were available for examination at a time when the Plaintiff "reasonably should know that the evidence may be relevant to anticipated litigation" and therefore had a duty to preserve evidence. But, the record is not clear as to when Plaintiff anticipated litigation and what evidence was remaining as of that date. Was it on the way to the hospital when Plaintiff allegedly told her son that she thought the faulty lighter caused the fire? What is sometime after that? When did she contact an attorney? Certainly, Plaintiff incurred a duty to preserve evidence no later than March or April 2020 when she formally retained counsel. But, based on Deborah Teeples' testimony that she called Morgan and Morgan when her brother gave her the lighter, it was likely much earlier.

Next, the Court must consider whether the evidence was destroyed with a culpable state of mind and the relevance of any destroyed evidence. Only then can the Court impose sanctions that will serve both "fairness and punitive functions." *Beaven*, 622 F.3d at 553-55. Evidence as to both of these issues is lacking.

Importantly, Defendant's request for the relatively severe sanctions of dismissal or exclusion of evidence of causation is proposed as a remedy for alleged destruction of the entire universe of spoliated evidence – including highly probative evidence destroyed by Billy Boze the day after the fire. The proposed sanctions are not specifically tailored to cure prejudice incurred from any failures in preservation after this initial destruction of evidence. Relatedly, Defendant's have not explained the prejudice (if any) from Plaintiff's failure to preserve evidence remaining after Billy Boze's clean-up.

Finally, the Court is particularly concerned about the failure to interview or preserve testimony of Charlotte Boze, the only witness to the fire incident, or to notify Defendant of her

declining health so that they might have an opportunity to preserve her testimony. *See Culhame v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 771 (E.D. Mich. 2019) ("the spoliation of evidence rule allows the drawing of an adverse inference against a party whose intentional conduct causes not just the destruction of evidence … but also against one who fails to preserve or produce evidence – including the testimony of witnesses."). However, absent a sufficiently developed record on this issue, the Court is unable to determine if sanctions are warranted on this basis.

Accordingly, as to alleged failure to preserve evidence remaining after December 29, 2019, the motion for sanctions is **DENIED WITHOUT PREJUDICE** to refiling to specifically address the issues identified by the Court. The parties **SHALL** refile the motion on or before October 20, 2023.

Pending resolution of the spoliation issue, the Motion for Summary Judgment (Doc. No. 60) and the pending Motions to exclude experts (Doc. Nos. 58, 63) are **DENIED** without prejudice to refiling, as those issues cannot properly be resolved until the questions of evidence and sanctions are resolved.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE