**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **DEBORAH S. TEEPLES as Personal** | ) | |
| **Representative of Charlotte S. Boze,** | ) | |
| **Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CASE NO. 3:20 –cv- 00941** |
| **vs.** | ) | **Judge Campbell** |
| | ) | **Magistrate Judge Frensley** |
| | ) | **Jury Demand** |
| | ) | |
| **BIC USA INC.,** | ) | |
| | | |
| **Defendant.** | | |

**DEFENDANT BIC USA INC.'S MEMORANDUM IN SUPPORT OF REFILED AND SUPPLEMENTAL MOTION FOR SANCTIONS REGARDING SPOLIATION AND FAILURE TO PRESERVE EVIDENCE**

Pursuant to this Court's Memorandum Opinion and Order of September 29, 2023 (Document No. "D.N." 82), Defendant BIC USA, Inc. ("BIC") submits this Memorandum in Support of its Refiled and Supplemental Motion for Sanctions Regarding Spoliation and Failure to Preserve Evidence, in order to address issues raised by this Court's opinion, and as otherwise directed.

**Facts**

The essential facts surrounding Plaintiff's spoliation and failure to preserve evidence and testimony related to the Boze fire scene and incident, are outlined in detail in BIC's original Motion to Dismiss and/or Exclude Evidence and Supporting Memorandum (D.N. 65 and 66), supporting documents and exhibits referenced therein, and Exhibits 1-9 to BIC's Motion for Summary Judgment, including but not limited to the Affidavits, Rule 26 Reports and supporting documents of BIC experts Kupson, Gottuk and Roby (Collective Exhibits 1-3, D.N. 60-1 – 60-3), the

deposition testimony of Plaintiff Deborah Teeples, witness Billy Wayne Boze, and the deposition testimony and Initial and Supplemental Rule 26 Reports of Plaintiff's consulting expert witness Peter Layson and remaining exhibits (D.N. 60-4 – 60-9); as well as the supplemental Declarations of BIC experts Roby and D'Amico. Additional facts relevant to the Court's referenced issues and points of inquiry are established in the supplemental materials (Exhibits 10-13) filed herewith, and in this Memorandum.

### A.  Timeline of Critical Events

The record establishes the following timeline of events, in addition to facts already before the Court:

**December 28, 2019:**

The Charlotte Boze fire incident occurred in the early morning hours.   After hearing his mother in another room, witness Billy Boze claims he went to where his mother was, took his mother's burning shirt off, then threw it to the floor and poured water on it.   He claims that he then wrapped her in a blanket and put her in his vehicle to go to the hospital.   (Billy Boze Dep. D.N. 60-7, pp. 40, 41, 58, 59).      Billy Boze claims that his mother Charlotte Boze commented that "the lighter, I reckon, didn't go out because my shirt caught on fire," [1] in response to a question Billy asked her on the way to the hospital.   ***If this statement is to be believed, both Charlotte Boze and Billy Boze already knew about an allegedly non-extinguishing lighter on the morning of the incident and before they ever arrived at the hospital***.   (*Id*. p. 47).   After arriving at the hospital, Billy Boze called "all of them" (his siblings) that morning and told them what happened.   (*Id*. p.

---

[1] As noted in BIC's Memorandum in Support of Motion for Summary Judgment at footnote 3 (D.N. 67, Page ID # 1975-76), this claimed statement is inadmissible hearsay, and BIC does not waive any objection to its admissibility or to the truth of the matters asserted in it, through this reference.   However, BIC is constrained to address it given the Court's Memorandum and Order.   In the context of this Motion, Billy's testimony on this issue has relevance only to Billy Boze's and Deborah Teeples' state of mind and claimed belief regarding involvement of a lighter in the incident, Billy Boze's sharing of that information with his siblings including plaintiff Deborah Teeples, and their resulting obligations to preserve evidence related to the fire incident.

2

54).   Billy claims "she said something about the lighter not going out and that's all I said to anybody." (*Id*. p. 57).   Later that day, Billy went home, picked up his mother's burned shirt off the floor and threw it in the trash, and cleaned up the "mess" where it had been. (*Id*. p. 58).   ***Billy did not describe throwing anything else away***.   (*Id*. pp. 58-60).   He never found his mother's burned cigarette. (*Id*. p. 69).   Billy does not know what happened to his mother's other clothes or shoes.  (*Id*. p. 68).   However, he claims that later that day he also picked up a lighter that he found on the floor, that he tried to use it and it did not immediately go out, and that he then put the lighter with his mother's cigarettes from the side table, and placed them on the kitchen windowsill.  (*Id*. pp. 58-70).


**December 28 or 29, 2019:**

Billy called his sister, Plaintiff Deborah Teeples, either the night of the incident or the next day, and told her that after going home he had found a lighter on the floor that didn't go out after he used it.   They discussed that this "had to have been what happened," and they put "two and two together" in their mind that the lighter must have caused their mother's incident.   ***Deborah told Billy to bring her the lighter so she could put it up***.  (Teeples Dep. D.N. 60-6, pp. 111-113). Billy saved his mother's cigarettes and the lighter he claims to have found on the floor by putting them on the kitchen windowsill.  (Billy Boze p. 70).   ***If this testimony is to be believed, both Billy and Deborah believed that an allegedly non-extinguishing lighter had caused the fire no later than the day after the incident, and knew that the evidence was important enough that it needed to be saved***.

3

**December 29, 2019 – January 3, 2020:**

Billy claims that the lighter and cigarettes went missing for some period of time, and he does not know where they went.  But three to seven days following the incident he took a lighter to Deborah (Billy Boze p. 70), although Billy cannot confirm that this was the same lighter he claims to have picked up on the day of the incident.  (*Id*. p. 61).   They claim that this lighter was operated while they were together, and that it did not go out immediately after use.  (Teeples pp. 71-72, Billy Boze pp. 70-72).  Deborah then put the lighter on her desk in her bedroom, and would later call Morgan & Morgan who would then send a courier to pick it up.  (Teeples p. 73).  ***There is no indication that any other evidence in the Boze house was disposed of or thrown away during this time***.

**January 25, 2020:**

Deborah picked up Charlotte Boze from the Stallworth facility at Vanderbilt, and Charlotte went to live at Deborah's house following her treatment.   Charlotte and Deborah discussed the incident, and Deborah claims that Charlotte was "very much with it."    (Teeples Dep. 106). Deborah also claims that during this time period Charlotte Boze brought up the Morgan & Morgan law firm, and it was decided that Deborah would call them since "that's who she wanted."  (*Id*. p. 39).   At some point after the incident Charlotte's chair was moved from her house to Deborah's house, so she could use it there.   (*Id*. at 19).

**February 18, 2020:**

According to Plaintiff's counsel Harris Yegelwel, Deborah Teeples first contacted Morgan & Morgan on February 18, 2020.  (Affidavit of Joseph R. Wheeler , Ex. 12 at  ¶ 6 and attached

4

emails).   Defense counsel have requested additional information as to when Mr. Yegelwel and Ms. Teeples first spoke, which has not been provided as of this filing.  (*Id*.).   ***There is no indication that any other evidence in the Boze house had been disposed of or thrown away as of February 18, 2020.***

**April 9, 2020:**

The lighter being kept by Deborah is transferred for delivery to Morgan & Morgan.   Hot Shot Courier receipt reflects that the subject lighter was handled by the courier service on this date. (Teeples Dep., Ex. 5).

**April 14, 2020:**

The Subject Lighter was sent from Morgan & Morgan's office and received by Plaintiff's expert Peter Layson at AEGI on April 14 or 15, 2020. (Layson Dep. D.N. 60-4, pp. 27, 37 and Ex. 3).

**April 14, 2020 – present:**

Although the family still owned the home and Ms. Boze was still alive after he was retained (Layson Dep. pp. 81-82), Plaintiff's expert Layson never went to the Boze home to investigate the fire event, never saw or took steps to preserve any physical evidence that had been located there, and never spoke to or interviewed Ms. Boze or any other witnesses.   He spoke only to counsel Yegelwel, who provided the information to Layson.  (Layson pp. 75-84).

5

**December 28, 2019 – December 14, 2021:**

Plaintiff's counsel Yegelwel had not visited the Boze home / fire site (Teeples Dep. p. 27), and apparently took no steps to photographically document or preserve any evidence that may have remained there.

**December 28, 2019 – November 2020:**

Neither the Plaintiffs, their attorneys, family members, nor experts ever reported the fire incident to any public agency or authority, nor did they ever report the incident to BIC or communicate with BIC before the lawsuit was filed and served in November 2020. (Teeples pp. 138-139; Wheeler Aff. Ex. 12, ¶ 2; Kupson Aff. Doc. 60-1, ¶ 6).

**December 28, 2019 – May 2021:**

Charlotte Boze was capable of answering questions and participating in giving a statement or deposition at various times following the fire incident (D'Amico Declaration Ex. 11 at ¶¶ 5-8), and Plaintiff Deborah Teeples who was her primary caregiver, knew of her declining health conditions. (*Id.* ¶¶ 5-6). However, Plaintiffs and their counsel did not arrange for a statement or deposition, and did not advise BIC or its counsel of Charlotte Boze's deteriorating terminal medical condition or her impending death before it occurred. (Wheeler Aff. Ex. 12, ¶ 4). Neither BIC nor its counsel were notified in advance that Charlotte Boze's home had been placed on the market or sold, or that any other contents of the home were being sold, disposed of, or destroyed. (*Id.* ¶¶ 3-5). As of December 14, 2021, Deborah Teeples testified that "absolutely nothing" from the scene of the fire still existed, and that she had sold her mother's chair. (*Id.* at 18-19).

6

**May 6, 2021:**

Charlotte Boze's home where the fire occurred was sold, without BIC or its counsel being notified. (Certified Warranty Deed, Ex. 13; Wheeler Aff. ¶ 5).


**May 31, 2021:**

Charlotte Boze died, without BIC or its counsel being notified. (Death Certificate in D.N. 60-8; Wheeler Aff. ¶ 4).


### B. Evidence and Testimony Lost, and Resulting Prejudice Established

The evidence and testimony lost due to the actions and inactions of the Plaintiffs Boze and Teeples, their family members, counsel and experts are outlined in detail in the record, including BIC's original Motion to Dismiss, supporting affidavits, exhibits and Memorandum (D.N. 65-66, and 60-1 through 60-9); and are further explained and analyzed in greater detail in the supplemental Affidavit of Dr. Richard Roby Ex. 10 at ¶¶ 11-19; the Declaration of Dr. Stephen D'Amico Ex. 11 at ¶¶ 3-8; and Affidavit of Joseph R. Wheeler Ex. 12 at ¶¶ 2-6. This includes not only the partially burned shirt of Ms. Boze (the only evidence known to have been discarded on the day of the incident); but numerous other items of evidence either immediately related to the area of the fire or otherwise within the home that would have contained information relevant to the scientific fire investigation and determination of ignition source and cause under NFPA 921 and other applicable industry standards (*see* detailed analysis of lost evidence and testimony outlined in Roby Aff. Ex. 10, at ¶¶ 11-19). In short, essential evidence and testimony bearing

7

directly on BIC's defenses of legal causation, were either lost or destroyed by the Plaintiffs and their representatives.

Evidence that existed after the day of the fire but was later lost or discarded included, but was not limited to, Ms. Boze's other unburned pajama bottoms / clothing and shoes she was wearing, her cigarettes, her electric recliner chair, 2 side tables, her blankets, water bottle on the side table, any personal items, ashtray(s) and/or smoking materials on the side table, floor coverings, matches or lighters that may have been used as ignition sources, curtains, couch, lamp, and any other objects or surfaces within the room that could have contained or accumulated material deposits related to ignition of the fire and /or the progression of the fire event.   Also relevant within the home, would have been any other clothing or personal effects of Ms. Boze, other lighters or matches, flammable materials, burned surfaces, and any items containing ignition residues, fabric fibers, evidence of burn residues or scorch marks, or otherwise capable of containing trace evidence related to the incident; bedding and other objects or surfaces that may have revealed previous mishandling of smoking materials and evidence of burning or scorching, as well as microscopic trace and chemical evidence related to ignition byproducts and the use of matches or other ignition sources by Ms. Boze.  (Roby Aff. Ex. 10, at ¶¶ 11-19).   Of the above items, only the partially burned shirt and the mess where Billy Boze poured water on the floor to extinguish it, were cleaned up by Billy Boze on the day of the incident.  Nothing else was described as being lost or destroyed on that day.   (Billy Boze Dep. pp. 57-59).

Traces and deposited residues of various chemical evidence would not have been visible to the naked eye, but would have remained after the day of the incident on or within various objects (e.g., fabrics, clothing, blankets, chair) until they were finally altered or destroyed (Roby Aff. Ex. 10 at ¶ 16).   The remains of Ms. Boze's partially burned cigarette and the partially burned match

also could have become trapped within other objects (such as the chair, blankets or clothing), and likewise could have been recovered. (*Id*.). Chemical evidence related to potential sources of ignition was capable of collection, analysis and identification by a variety of methods and analytical processes, including but not limited to stereomicroscopic examination, scanning electron microscopy (SEM) and energy dispersive x-ray spectroscopy (EDS), gas chromatography, mass spectroscopy, and Fourier transform infrared spectroscopy (FTIR), among others. Utilizing all of this these methods and information, BIC and its investigators would have been able to develop a very clear record of this event and preserve any remaining evidence for BIC's defense. (*Id*. at ¶ 16 and *passim*).

Dr. Roby confirms that all of the items outlined above and which were discarded or destroyed after the day of the fire, indeed had very important "evidentiary value" in determining the actual cause and source of ignition of the Boze fire. (Roby Aff. Ex. 10, ¶¶ 15-18). The absence and destruction of this evidence has prejudiced BIC and its fire investigators from ever being able to discover physical evidence to disprove the Plaintiff's theory that the "subject lighter" (as opposed to the ignited match and ignited cigarette that Ms. Boze herself admitted in her own medical records) was the actual cause of the fire. Similarly, this same physical evidence could have been used to corroborate Ms. Boze's own statements to her medical providers on the day of the fire, about the source of ignition. (*Id*.).

It is beyond legitimate dispute that Plaintiffs Boze and Teeples, their counsel and experts had a legal duty and obligation to document and preserve both visual and physical evidence in this situation. That duty and obligation is established not only by caselaw, but also by applicable industry standards. NFPA 921 and various other industry standards establish the RESPONSIBILITY not only of fire investigators, but ***"anyone"*** handling fire scene evidence, to

avoid its spoliation and destruction. *See, e.g,* Roby Aff. D.N. 60-2, and Roby Declaration D.N. 75-1 at ¶ 15 and attached NFPA 921, Section 12.5.3.1 <u>Responsibility</u> (emphasis added). ***<u>The Plaintiffs, Billy Boze, and any others handling evidence from a fire scene are not excused from these requirements</u>***. (*Id.*). In addition to NFPA 921, other specific standards that are potentially implicated in this situation include, but are not necessarily limited to, ASTM E1188-11 (Collection and Preservation of Information and Items by a Technical Investigator); E806-07 (Examining and Preparing Items that Are or May Become Involved in Criminal or Civil Litigation); E1020-13e1 (Reporting Incidents that May Involve Criminal or Civil Litigation); E1459-13 (Physical Evidence Labeling and Related Documentation); and E1492-11 (Receiving, Documenting, Storing and Retrieving Evidence in a Forensic Science Laboratory). (*Id.*, and Roby Aff. Ex. 10, ¶ 14).

These losses and failures to document and preserve physical and factual evidence, combined with the Plaintiff's failure to report the incident to any investigating authority or to BIC, not only violated NFPA 921 and various ASTM and industry standards, but also deprived BIC of vital information that could have been discovered and used to defend against the claims now made against it. In addition, the failure of Plaintiff, her counsel and experts to timely notify BIC of the incident, also deprived BIC and its experts of the opportunity to conduct their own investigation before the remaining evidence was altered or forever lost. (*Id.* at ¶¶ 14-15 and *passim*).

Finally, the failure of the Plaintiff, her experts and attorneys to preserve or memorialize any testimony from Ms. Boze, who was the only witness to the initiation of the fire, is critically prejudicial. They had well over a year after the incident in which to do this, and both NFPA 921 and other industry standards establish the responsibility to preserve witness testimony. Ms. Boze remained alive and capable of giving testimony long after the event, and Plaintiff Teeples was her primary in-home caregiver and aware of her health condition. (D'Amico Dec. Ex. 11, ¶¶ 4-8). By

continuing their pattern of failing to preserve her testimony and failing to inform BIC or its counsel of Ms. Boze's deteriorating terminal condition and impending death, Plaintiff and her counsel effectively foreclosed any opportunity to preserve Ms. Boze's testimony before she died. They remained silent as Ms. Boze's condition deteriorated, as she eventually was placed in hospice care, and soon thereafter died; and also remained silent as all evidence from the fire scene, Ms. Boze's home, and her belongings were either irretrievably altered, discarded or sold.

The loss of this countervailing physical evidence and especially Ms. Boze's own testimony was critically prejudicial to BIC. It is very likely that the remaining physical evidence and the testimony of Ms. Boze would have corroborated her own initial admissions to medical providers about the source of ignition and cause of her burn incident (cigarette and/or match), while disproving the Plaintiff's later claims and attempts to blame a BIC lighter for their mother's fire incident. If this were not the case, there is no explanation why the Plaintiff and her counsel (who maintained exclusive control over the home and remaining evidence, who were planning for many months to sue BIC, and who were intimately familiar with Ms. Boze's deteriorating health) would not have taken steps to preserve the critical evidence and the testimony of Ms. Boze during the course of over an entire year while they had the opportunity to do so.

Here, it is indisputable on the record that spoliation has occurred, and that substantial prejudice has occurred to BIC as a direct result. Even Plaintiff's own expert Peter Layson admits that the scene was altered and not properly handled or preserved, which hampered the evaluation of the incident. (Layson p. 143). Plaintiff has not presented and cannot present any competent evidence to the contrary, and appropriate sanctions therefore are warranted. *See Austral-Pacific Fertilizers v. Cooper Industries*, Nos. 95-4255/95-4287, 1997 U.S. App. LEXIS 5383 (6th Cir. Mar. 18, 1997).

## C.  Duty and Culpable State of Mind Established

Plaintiff cannot deny the failure to document, collect, and preserve any of the other surviving objects and evidence within the home that undeniably still existed after Billy Boze's initial cleaning, and later after Plaintiff's counsel and expert Layson became involved; or the failure to preserve any contemporaneous statements of witnesses or the testimony of Ms. Boze herself – all of which were controlled exclusively by the Plaintiffs, their counsel and witnesses. ***Defendant submits that the duty to document and preserve evidence first arose as soon as the day after the incident*** (again, if Plaintiff's witnesses are to be believed).  This is when Charlotte Boze, Deborah Teeples, and Billy Boze all allegedly blamed a non-extinguishing BIC lighter for the fire; and when Billy and Deborah made the conscious decision to start saving evidence (lighter and cigarettes).  By this time, they were well aware of a claimed product abnormality and "should have known that the evidence may be relevant to future litigation."  *See*, *e.g.*, *Beaven v. United States Department of Justice*, 622, F. 3d 540, 553-54 (6th Cir. 2010) and authorities therein.  ***Here, by their own testimony, Plaintiffs knew or should have known of a potential claim within a day of the incident***.

At the very latest, when Charlotte Boze discussed calling Morgan & Morgan after coming home from the hospital on January 25, 2020 (which led to Deborah Teeples contacting Morgan & Morgan no later than February 18, 2020), ***litigation was already contemplated and the duty of preserving evidence already existed***.  Contrary to Plaintiff's suggestion, the retention of counsel is not a prerequisite to the duty of preservation; rather, numerous courts have held that the duty of preservation arises earlier.   In applying the three factors set forth in *Beaven*, the Sixth Circuit established that "the obligation element is met where a defendant knows evidence might be relevant to future potential litigation." *Johnson v. Metropolitan Gov't of Nashville & Davidson*

*County*, 502 F. App'x 523 (6th Cir. 2012) (*citing Beaven*, 622 F.3d at 553).  Similarly, as this Court wrote last year, "[t]his duty to preserve material evidence arises not only during litigation ***but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation***."  *Tolson v. Washburn*, 2022 U.S. Dist. LEXIS 84206, *13 (M.D. Tenn. 2022) (emphasis added); *see also State Farm Fire & Casualty Co. v. Hamilton Beach Brands, Inc.*, 2018 U.S. Dist. LEXIS 57908, *7 (W.D. Ky. 2018) ("[The] obligation to preserve may arise when a party ***should have known*** that the evidence may be relevant to future litigation") (emphasis added).  This Court has further noted that the duty to preserve "includes information that [the] party has control [of] and reasonably knew or could reasonably foresee was material to a potential legal action." *Huntsville Golf Dev., Inc. v. Brindley Constr. Co.*, 2011 U.S. Dist. LEXIS 86445, *54-55 (M.D. Tenn. 2011).

The same rules apply here.  Although Plaintiff previously has argued that Morgan & Morgan was not "formally retained" until March or April 2020 (a claim that remains unverified in the record), ***the fact is that the Boze family was contemplating litigation much earlier than this – and their contemplation of litigation required a duty to preserve evidence here.***  Importantly, the testimony in the record is that the only evidence discarded on the day of the incident was Ms. Boze's charred shirt fragments and the water poured on them, which Billy Boze cleaned up after coming home.   Plaintiffs already were on notice of a potential claim at that time, were contemplating litigation shortly thereafter, and the obligation to preserve evidence attached. Plaintiffs, and then their counsel and experts, are jointly responsible for the loss of all evidence and testimony that occurred thereafter.

As to the requisite state of mind, this Court correctly has noted that intentional or willful misconduct is not required in order to establish a "culpable state of mind" regarding loss or

13

destruction of evidence. Rather, simple carelessness and negligence are sufficient. *See In re McCarty,* 644 F. App'x 372 (6th Cir. 2016). In *McCarty*, the Court acknowledged that negligent acts of a party are sufficient for a spoliation finding, since "the culpable state of mind factor ***is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently*.**" *Id.* at 378 (6th Cir. 2016) (citing *Beaven*, 622 F.3d at 554) (emphasis added). The Court further found that "the point of the relevance prong of the spoliation analysis is ***not to inquire whether the lost or destroyed evidence was dispositive; rather, the party seeking a spoliation sanction must make some showing indicating that the destroyed evidence would have been relevant to the contested issue such that a reasonable trier of fact could find that it would support that claim*.** *Id.* at 379 (internal citations omitted; emphasis added). As BIC has proven, the uncontroverted evidence in the record establishes that the physical evidence and testimony that were lost in this situation (outlined at length in the record and at Roby Aff. Ex. 10, ¶¶ 11-19), were not only "relevant" to BIC's defenses, but were ***critically important*** to issues of fire cause, source of ignition, and eyewitness corroboration of the actual facts and cause of the fire event by the only eyewitness with knowledge. (*Id.* at ¶¶ 14-19). All of these issues go directly to the heart of the parties' claims and defenses.

Here, there can be no question that ***at best***, the actions of the Plaintiffs and family, and later their counsel and expert, were done ***knowingly and/or negligently*** (even if arguably done without an intent to breach a duty to preserve). The failure to take a single photograph of the scene while instead photographing Charlotte Boze; the failure to document or save anything else from the fire scene or home while deliberately saving only a lighter; and the decision to sell the home and dispose of the contents all were conscious and knowing decisions. The presuit decisions not to send Plaintiff's counsel and their fire investigator to the scene to document the remaining evidence

14

and not to preserve the testimony of Ms. Boze and other witnesses, also were knowing decisions -- as was the decision not to notify BIC of the incident for almost a year as litigation was planned, but while allowing all potentially countervailing physical evidence to be lost or destroyed in the meantime.

Finally, the decisions of Plaintiff and her counsel ***even after the lawsuit was filed***, **NOT** to notify BIC and its counsel of Ms. Boze's terminal illness and impending death, **NOT** to notify BIC of the disposal of evidence and sale of her home, and **NOT** to take any steps to preserve her testimony, also were knowing decisions.   At best this reflects a pattern of conduct that was careless or negligent, and at worst suggests a course of conduct by omission to deprive BIC of the opportunity to investigate and discover essential countervailing evidence and testimony.   But whether deliberate or negligent, all of these actions were done ***knowingly***, and therefore are not excusable. *Beaven*, 622 F.3d at 554.   As this Court has noted at page 10 of its Order[2], spoliation sanctions can extend not only to those whose conduct results in "destruction of evidence," ***but also against one who fails to preserve or produce evidence -- including the testimony of witnesses***." *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 771 (E.D. Mich. 2019) (*quoting Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (emphasis added).    Here, Plaintiff had actual knowledge of Ms. Boze's condition and total control over the preservation of her testimony, but failed to preserve it.

It speaks volumes that after being challenged on these issues, Plaintiff still either failed to acknowledge them, dismissed them as unimportant, or summarily claimed that the admittedly destroyed evidence had "no evidentiary value."    Clearly, BIC has shown otherwise.   The failure of Plaintiffs, their counsel, representatives and retained experts to document and preserve critically

---

[2] D.N. 82, PageID #: 2232.

relevant evidence and testimony (compounded by their failure to notify opposing parties of the essential facts and information necessary to preserve that evidence and testimony) flies directly in the face of NFPA 921, ASTM and other industry standards, and the legal duties required of interested parties and potential litigants. Plaintiff Teeples, her counsel and experts were no strangers to litigation[3], and they knew better. Defendant respectfully submits that the record facts are clear, and the prejudice to BIC is undeniable. The only question that remains, is the proper sanction(s) to be applied.

### D. Appropriate Sanctions

Having established that Plaintiff, members of the Boze family, and their counsel unequivocally failed in their obligation to preserve necessary and critical evidence, thereby requiring sanctions, the question turns to the suitable remedy. Pursuant to this Court's "inherent power to control the judicial process," it is vested with authority to impose spoliation sanctions that "serve[s] both fairness and punitive functions." *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc). As the Sixth Circuit has instructed, "[b]ecause failures to produce relevant evidence fall 'along a continuum of fault -- ranging from innocence through the degrees of negligence to intentionality,' the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id.* at 652-53. This creates a range of sanctions available to the District Court, from dismissing a case to "instructing a jury that it may infer a fact based on lost or destroyed evidence." *Id.*

In this case, the severity of prejudice suffered by BIC because of the failures of the Plaintiffs and their representatives, warrants the equally severe sanction of dismissal. This was

---

[3] Ms. Teeples was previously involved in a personal injury/medical negligence lawsuit involving burn injuries she sustained prior to this case (Teeples Dep. pp. 32-33); and plaintiff's counsel and expert Layson have had extensive experience in product liability and fire investigations and litigation (Layson Dep. pp. 62-75).

16

precisely the remedy handed down by the trial court in *Rhodes v. Risinger Bros. Transfer*, 2016 U.S. Dist. LEXIS 116083 (W.D. Ky. Aug. 30, 2016), in an analogous situation. There, the third party plaintiff Risinger failed to preserve certain trailer parts from an accident following repairs made by a nonparty truck stop. Risinger asserted a claim for indemnity against third party defendant Intermodal Repair Services, Inc., which arose out of Intermodal's repair and maintenance of the subject trailer prior to the accident. In addition to moving for summary judgment on the merits, Intermodal also sought summary judgment as a sanction for Risinger's undisputed failure to preserve the trailer parts as evidence. Citing the Sixth Circuit's guidance in *Adkins*, the district court determined that dismissal was an appropriate sanction, because of the high degree of prejudice suffered by Intermodal as a result of Risinger's failure to preserve evidence. *Rhodes*, 2016 U.S. Dist. LEXIS at *15 (citations omitted). The court found that "[w]ithout these trailer parts, the cause of the accident cannot be determined. The lack of available evidence also prevents Intermodal … from developing its defenses." *Id*. at *15-16 (citations omitted).

The *Rhodes* holding translates well to the spoliation facts currently before the Court. Much like Risinger's failure to keep certain trailer components prevented Intermodal from being able to determine the true cause of the subject accident, the acts and omissions on the part of the Plaintiffs Boze and Teeples, Billy Boze, and their family members as well as their counsel and expert witness in failing to preserve critical physical evidence and testimony, has deprived BIC from being able to present direct countervailing physical evidence and testimony of causation regarding the Boze fire incident. However, unlike the inadvertent spoliation of evidence by a nonparty in the course of making repairs shortly after the accident in Risinger, the evidence and testimony spoliated and lost by the Boze family, their legal counsel and expert occurred over the course of weeks and

17

months after the subject incident, and while all the evidence and testimony still was within their possession and control. Rather than taking steps to maintain and preserve this critical evidence and testimony which would have allowed BIC to fully defend its case and determine the true cause of the fire incident, the Boze family and their representatives kept BIC in the dark.

As the record reflects and through supporting documents, testimony, affidavits and declarations, there is no dispute that months passed during which crucial evidence and testimony in the possession and control of the Plaintiff and her family were lost – even while they were clearly contemplating legal action against BIC over Ms. Boze's injuries. Yet, not only did they fail to take <u>any</u> steps to notify BIC of the alleged fire incident and the story they conjured up regarding the lighter, they actively disposed of evidence that was necessary for inspection under the authoritative NFPA 921 standards, and failed to preserve the most critical testimony from the only eyewitness to the actual cause of the fire – Charlotte Boze. These failures, which were entirely preventable by the Boze family and their representatives, acutely prevented BIC from discovering the true cause of the Boze fire incident, and more importantly, being able to refute the Plaintiff's later-offered claims. The severe prejudice resulting to BIC likewise warrants the most severe of sanctions: dismissal of the Plaintiff's claims.

The Plaintiff should not benefit from the spoliation caused by herself, her family, and her legal team. Nevertheless, and only if the Court should it elect not to dismiss Plaintiff's claims, BIC submits that the Court must preclude the Plaintiff from offering any testimony, opinions, or argument regarding the cause and origin of the subject fire being a non-extinguished lighter. This was the remedy fashioned by this Court's Western District brethren in *Lexington Insurance Co. v. Tubbs*, No. 06-2847-STA, 2009 U.S. Dist. LEXIS 46824 (W.D. Tenn. June 2, 2009), a case that was previously discussed in BIC's briefing (*see* D.N. 66, Page ID #: 1963-65). In that fire loss

18

case, after having found that sanctions for spoliation were warranted because the defendant had suffered actual prejudice, the court not only imposed a negative inference instruction against the plaintiff, ___*it also precluded the plaintiff from presenting any expert testimony on the cause and origin of the fire*___.  In effect, the court disallowed the plaintiff from advancing its claims as to how the subject fire started, because the plaintiff's spoliation had destroyed evidence which was critical to the defendant's case.   Similarly, in *Barton Brands, Ltd. v. O'Brien & Gere, Inc.*, 2009 U.S. Dist. LEXIS 52887 (W.D. Ky. 2009), the district court also excluded expert testimony on cause and origin of a fire due to plaintiff's failure to notify the defendant of evidence destruction and otherwise preserve material that was of central importance to the case.   The same reasoning and result should apply here.   Aside from the factual and legal deficiencies otherwise precluding the admissibility of Plaintiffs' expert testimony under Rule 702 and *Daubert*, their experts Layson and Laux certainly should not be allowed to speculate and add perceived credence to the unsupported theory that a BIC lighter caused the Boze fire, based on inadmissible hearsay statements that cannot be countered due to Plaintiffs' spoliation of countervailing evidence and eyewitness testimony.

For the same reasons, fairness also dictates that this Court should remedy the Plaintiff's spoliation by precluding the Plaintiff or her family members from offering any testimony, opinions, or argument regarding a non-extinguishing BIC lighter being the cause and origin of the subject fire; and should preclude any testimony about what Ms. Boze allegedly said regarding the incident, aside from what was contemporaneously entered in her medical records on the day of the incident.   As BIC has proven, the loss and spoliation of critical countervailing physical evidence and eyewitness testimony has severely prejudiced BIC from investigating and countering the Plaintiff's proffered theory of the "Subject Lighter" being the actual cause of the fire.  Simply put, there can be no greater prejudice to BIC than being unable to investigate and "test" Plaintiff's

unproven theory, without having the same ability as the Plaintiffs had to access and analyze evidence and testimony, and cross examine the key witness in the case. Plaintiff should not receive a windfall from their spoliation of critical evidence and failure to preserve the testimony of the only eyewitness -- Charlotte Boze -- who would have been able to either corroborate or disprove the claims that Plaintiff now attempts to advance. No lesser sanction can remedy the essential prejudice that BIC has suffered here.

## Conclusion

For all of the foregoing reasons and based upon the entire record and authorities, BIC respectfully requests that the Court impose sanctions of either dismissal, and/or preclusion of expert and lay witness testimony asserting that the subject BIC lighter was the actual source of ignition and cause of the Boze fire. These sanctions are narrowly tailored to address the loss of critical evidence and testimony on the issues of ignition source and fire causation resulting from the combined actions of the Plaintiffs and their representatives here, and are the only way that the substantial prejudice suffered by BIC can be effectively remedied.

*/s/ Joseph R. Wheeler*
Joseph R. Wheeler (12847)

*/s/ Jason K. Murrie*
Jason K. Murrie (27441)
**Cornelius & Collins, LLP**
211 Athens Way, Suite 200
Nashville, TN 37228
P: (615) 244-1440
F: (615) 254-9477
jrwheeler@cclawtn.com
jkmurrie@cclawtn.com

*Attorneys for Defendant BIC USA Inc.*

20

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of October, 2023, the foregoing Memorandum in Support of BIC's Refiled and Supplemental Motion for Sanctions Regarding Spoliation and Failure to Preserve Evidence was filed electronically with the Clerk of the Court through the CM/ECF system, which will serve the foregoing document and the notice of electronic filing by electronic mail to all CM/ECF participants, including:

Harris I. Yegelwel, Esq.
Joshua D. Moore, Esq.
Morgan & Morgan, P.A.
20 N. Orange Avenue
Orlando, FL 32801
hyegelwel@forthepeople.com
joshmoore@forthepeople.com

Phillip S. Georges, Esq.
Brett Windrow, Esq.
Phillip S. Georges, PLLC
501 Union Street, Suite 200D
Nashville, TN 37219
phil@wolfpacklawyers.com


*/s/ Joseph R. Wheeler*
Joseph R. Wheeler