IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBORAH S. TEEPLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:20-CV-00941 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| BIC USA INC., ) | MAGISTRATE JUDGE FRENSLEY |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant BIC USA Inc.'s ("BIC") Refiled and Supplemental Motion for Sanctions Regarding Spoliation and Failure to Preserve Evidence.[1] (Doc. No. 83). Plaintiff Deborah Teeples, as representative of the estate of Charlotte Boze ("Teeples"), filed a response in opposition (Doc. No. 87), and BIC filed a Reply (Doc. No. 88).

For the reasons stated herein, BIC's supplemental motion for sanctions is **GRANTED** in part. The Court finds the sanction of dismissal is not warranted. However, Teeples will be prohibited from offering at trial: (1) any evidence of or arising from statements purportedly made by Ms. Boze about the cause of the fire at issue; and (2) any testimony or opinions that are based on evidence identified by BIC as having been spoliated.

### I. BACKGROUND[2]

This lawsuit arises out of a fire incident that occurred at Charlotte Boze's home on December 28, 2019. (Doc. No. 84 at 2). At the time of the fire, Ms. Boze was alone in the sitting room of her home.

---

[1] On February 10, 2023, BIC filed its first Motion to Dismiss and/or Exclude Evidence Due to Spoliation. (Doc. No. 65). On September 29, 2023, the Court entered a Memorandum and Order (Doc. No. 82) denying BIC's motion. Specifically, the Court held that BIC failed to tailor its requests for specific sanctions to cure prejudice incurred from failure to preserve evidence. Additionally, while the Court was concerned about Teeples' failure to interview or preserve testimony of Ms. Boze or notify BIC of her declining health so that it had an opportunity to preserve her testimony, the record was insufficiently developed on that issue. As a result, the Court was unable to determine if sanctions were warranted. Accordingly, the Court denied BIC's request for sanctions without prejudice to refiling to specifically address the issues identified by the Court. (Doc. No. 82 at 10).

[2] These facts are taken from Bic's supplemental motion for sanctions (Doc. No. 83) and Plaintiff's response to the Statement of Undisputed Material Facts filed in conjunction with Defendant's Motion for Summary Judgment. (Doc. No. 77). It appears that these facts are undisputed for purposes of the motion.

(Doc. No. 77 ¶ 5). Her adult son, Billy Boze ("Boze"), was at the other end of the house. (Doc. No. 60-7 at PageID # 1633). Boze heard his mother scream, ran to the sitting room, and found Ms. Boze with the upper left chest area of her shirt on fire. (*Id.*). Boze took his mother's burning shirt off, then threw it to the floor and poured water on it. (*Id.* at PageID # 1634, 1654). He then wrapped her in a blanket and put her in his vehicle to go to the hospital. (Doc. No. 60-7 at PageID # 1635-1636). Boze claims that on the way to the hospital, Ms. Boze commented that "the lighter, I reckon, didn't go out because my shirt caught on fire." (*Id.* at PageID # 1642). At the hospital, Boze called his siblings and informed them that Ms. Boze "said something about the lighter not going out." (*Id.* at PageID # 1652). On that same date, Boze threw away his mother's burned shirt and cleaned up the "mess" where it had been. (*Id.* at PageID # 1653). Boze never found his mother's burned cigarette. (*Id.* at PageID # 1664). He does not know what happened to his mother's other clothes or shoes. (Doc. No. 60-7 at PageID # 1663). Boze then picked up a lighter he found on the floor, tried to use it, and put the lighter with his mother's cigarettes from the side table and placed them on the kitchen windowsill. (*Id.* at PageID # 1655-1658).

On or about December 28 or 29, 2019, Teeples (Ms. Boze's daughter) and Boze discussed their belief that the lighter didn't go out after Ms. Boze used it and that it must have caused the incident. (Doc. No. 60-6 at PageID # 1510-1512). Boze claims that at some point between December 29, 2019 and January 3, 2020, the lighter and cigarettes went missing and he did not know where they were. (Doc. No. 60-7 at PageID # 1665). Three to seven days after the fire incident, Boze took a lighter to Teeples, although he cannot confirm this was the same lighter he picked up on the day of the incident. (*Id.*).

Following her treatment, Ms. Boze moved in with Teeples. (*Id.*). Teeples contends that as of January 25, 2020, she had discussed the fire incident with Ms. Boze and Ms. Boze was "very much with it." (Doc. No. 60-6 at PageID # 1505). According to Plaintiff's counsel, Teeples first contacted Morgan & Morgan on February 18, 2020. (Affidavit of Joseph R. Wheeler, Ex. 12 at ¶ 6 and attached emails). On April 9, 2020, the lighter was transferred for delivery to Morgan & Morgan. (Doc. No. 60-6 Ex. 5).

On April 14 or 15, 2020, the lighter was received by Plaintiff's expert, Peter Layson. (Doc. No. 60-4 at PageID # 921, 931, Ex. 3). Although the family still owned Ms. Boze's home at that time and Ms. Boze was still alive, Plaintiff's expert never went to Ms. Boze's home to investigate the fire incident, took steps to preserve any physical evidence that had been located there, or spoke to or interviewed Ms. Boze or any other witnesses. (*Id.* at PageID # 969 - 978). Plaintiff's counsel did not visit Ms. Boze's home. (Doc. No. 60-6 at PageID # 1426). Neither Teeples, her counsel, nor her experts ever reported the fire incident to any public agency or authority. (*Id.* at PageID # 1537-1538; Doc. No. 83-3 ¶ 2).

Dr. Stephen D'Amico, an internist and geriatric specialist retained by BIC, opined that from December 28, 2019 until May of 2021, Charlotte Boze was capable of answering questions and participating in giving a statement or deposition at various times following the fire incident. (Doc. No. 83-2 ¶¶ 5-8). Teeples, Ms. Boze's primary caregiver, knew of Ms. Boze's declining health conditions. (*Id.* ¶¶ 5-6). However, Teeples and her counsel did not arrange for Ms. Boze's deposition and did not advise BIC or its counsel of her deteriorating terminal medical condition or her impending death before it occurred. (Doc. No. 83-3 ¶ 4). On May 6, 2021, Charlotte Boze's home where the fire occurred was sold. (*Id.* ¶ 5; Doc. No. 83-4). Neither BIC nor its counsel were notified in advance that Ms. Boze's home had been put on the market or sold, or that any other contents of the home were being sold, disposed of, or destroyed. (Doc. No. 83-3 ¶¶ 3-5). On May 31, 2021, Charlotte Boze died, without BIC or its counsel being notified. (*Id.* ¶ 4; Doc. No. 60-8 at PageID # 1858). Teeples testified that she had sold her mother's chair and that "absolutely nothing" from the scene of the fire still existed. (Doc. No. 60-6 at PageID # 1418).

## II.     ANALYSIS

A federal court possesses inherent powers with broad discretion to impose proper sanctions for spoliation and failing to preserve evidence, which sanctions should serve fairness and punitive functions. *Adkins v. Wolever*, 554 F.3d 650, 651-52 (6th Cir. 2009). The Sixth Circuit utilizes a three-part test for

determining whether sanctions are appropriate: (1) whether the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) whether evidence was destroyed with a "culpable state of mind"; and (3) whether "the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Johnson v. Metro. Gov't of Nashville and Davidson County*, 502 Fed. App'x 523, 531-32 (6th Cir. 2012) (quoting *Beaven v. U.S Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010)). The "obligation element is met where a [party] knows evidence might be relevant to future potential litigation." *Id.* at 532 (internal citation omitted). Additionally, the "culpable state of mind" element may be satisfied when evidence was destroyed knowingly or negligently. *Id.* (internal citation omitted).

Here, BIC seeks sanctions based on Teeples' spoliation and failure to preserve evidence. BIC specifically argues that Teeples failed to preserve physical evidence and maintain the scene of the incident at issue, including by discarding evidence and selling the house in which the fire incident occurred, and that as a result, BIC's experts were precluded from analyzing the scene and related evidence. BIC also argues that Teeples' failure to preserve the testimony of Ms. Boze before her death in May 2021 warrants sanctions.

In response, Teeples argues that the 3 members of the Boze family – Charlotte Boze, Billy Boze, and Deborah Teeples – should not be expected to have understood the importance of evidence preservation based on their background and occupations. Moreover, Teeples argues that her counsel judged the evidentiary value of the items that were not preserved and that Ms. Boze's chronic health conditions were managed before they changed in March 2021, which led to her death on May 31, 2021. Teeples does not dispute the detailed timeline concerning the destroyed and/or unpreserved evidence set forth in BIC's motion, nor does Teeples provide any legal authority for her positions.

## A. Failure to Preserve Physical Evidence

BIC explains in great detail the relevance of the physical evidence at issue, including that "[t]races and deposited residues of various chemical evidence would not have been visible to the naked eye, but would have remained after the day of the incident on or within various objects (e.g., fabrics, clothing, blankets, chair) until they were finally altered or destroyed" and "[c]hemical evidence related to potential sources of ignition was capable of collection, analysis and identification by a variety of methods and analytical processes, including but not limited to stereomicroscopic examination, scanning electron microscopy (SEM) and energy dispersive x-ray spectroscopy (EDS), gas chromatography, mass spectroscopy, and Fourier transform infrared spectroscopy (FTIR), among others." (Doc. No. 84 at 8-9). BIC also contends that the discarded and/or destroyed evidence outlined in its motion had important evidentiary value in determining the cause and source of the fire. (*Id.* at 9). BIC asserts that the absence and destruction of this evidence has prejudiced BIC and its experts from ever being able to analyze physical evidence related to the fire. (*Id.*). Teeples does not argue to the contrary in any meaningful or detailed way.

There is no question that the following physical evidence was not preserved:

(1) The partially burned shirt of Ms. Boze;

(2) Mrs. Boze's unburned pajama bottoms, other clothing, and shoes she was wearing at the time of the fire;

(3) Ms. Boze's cigarettes;

(4) Mrs. Boze's electric recliner chair;

(5) The two side tables near the scene of the incident;

(6) Ms. Boze's blankets;

(7) Ms. Boze's other clothing, bedding, and bedclothes from her bedroom;

(8) The coffee table and TV cabinet;

5

(9) The water bottle on the side table;

(10) Mrs. Boze's personal items, ashtray(s) and/or smoking materials on the side table;

(11) Floor coverings, matches or lighters that may have been used as ignition sources;

(12) Curtains, couch, lamp, and any other objects or surfaces within the room that could have contained or accumulated material deposits related to ignition of the fire and/or progression of the fire incident;

(13) Any other clothing or personal effects of Ms. Boze, other lighters or matches, flammable materials, burned surfaces, and any items containing ignition residues, fabric fibers, evidence of burn residues or scorch marks, or otherwise capable of containing trace evidence related to the incident; and

(14) Bedding and other objects or surfaces that may have revealed previous mishandling of smoking materials and evidence of burning or scorching, as well as microscopic trace and chemical evidence related to ignition byproducts and the use of matches or other ignition sources by Ms. Boze.

There does not appear to be any question that Teeples and/or her counsel had control over the evidence. Accordingly, the question is whether destruction of the evidence warrants sanctions. This question turns on whether there was a "knowing" or "negligent" state of mind. In the days following the incident at issue, Ms. Boze's family certainly suspected that a lighter may have caused the fire and took steps to preserve that item. (Doc. No. 84 at 2-4). Within a month of the fire, Ms. Boze and Teeples discussed hiring an attorney and contacted counsel approximately 3 weeks later (*Id.* at 4-5). Nonetheless, no steps were taken by Teeples or her counsel to photograph the scene of the fire, nor did Teeples' expert visit or photograph the scene or related evidence. (*Id.* at 5-6). Moreover, while the occupations and general understanding of Ms. Boze, Billy Boze, and Teeples may suggest that they may not have appreciated the evidentiary importance of certain items, that relates to the appropriate sanction, not

6

whether they failed to act as a reasonable person in dealing with evidence, especially when litigation was clearly contemplated within 2 months of the fire at issue.

Based on the undisputed facts, the Court finds that Teeples, her counsel, and her expert negligently failed to preserve relevant evidence. Having found a "culpable state of mind", the Court finds that all three of the *Beaven* factors have been met to warrant sanctions concerning the preservation of evidence. The appropriate sanction, therefore, is to prohibit Teeples from introducing any testimony or opinions at trial that are based on evidence identified by BIC as having been spoliated.

**B. Failure to Preserve Testimony**

For the analysis concerning Teeples' failure to preserve the testimony of Ms. Boze, the culpability is greater. Teeples filed this action on November 2, 2020. The parties agree that Ms. Boze was cognizant until March of 2021. Teeples does not dispute that her counsel made no attempt to notify BIC's counsel of Ms. Boze's deteriorating health in the final 2 months of her life. Indeed, Plaintiff's counsel's flippant response appears to argue that no one knew of the need to preserve Ms. Boze's testimony before March of 2021, but it appears Plaintiff's counsel failed to notify BIC's counsel of a change in Ms. Boze's condition during the following 2 months before she died on May 31, 2021. Teeples' failure to consider principles of fundamental fairness to BIC was, at best, reckless, and denied BIC the ability to question the only witness to the fire at issue.

The severity of sanctions depends on the circumstances and should correspond to a party's degree of fault. *Adkins v. Wolever*, 554 F.3d 650, 652-53 (6th Cir. 2009). The Court finds that the fairness and punitive functions undergirding an award of sanctions do not support the sanction of dismissal requested by BIC. However, the prejudice to BIC is significant, notwithstanding Teeples' counsel's cavalier argument to the contrary.

Further, even if any statements made by Ms. Boze were somehow admissible under an exception to the prohibition against offering hearsay evidence, Teeples' failure to preserve Ms. Boze's testimony

and notify BIC's counsel of changes in her health condition prejudiced BIC in a significant way. Accordingly, Teeples will not be allowed to offer at trial any evidence of or arising from statements purportedly made by Ms. Boze about the cause of the fire at issue.

### III. CONCLUSION

For the reasons stated above, BIC's supplemental motion for sanctions (Doc. No. 83) is **GRANTED** in part. Teeples will be prohibited from offering at trial (1) any evidence of or arising from statements purportedly made by Ms. Boze about the cause of the fire at issue and (2) any testimony or opinions that are based on evidence identified by BIC as having been spoliated.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE